UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARNELL HUNNICUTT, SENIOR #229589,
    Plaintiff,

-against-

TAWANDA KITT, DENNIS MARINELLI,
ANGEL QUIROS, LAUREN POWERS,
STEPHEN FAUCHER, KIM DICIOCCIO,
MICHAEL LAJOIE, LT. COMIER,
KIM WEIR, CO WILSON, KARL KROB,
LT. PAFUMI, LT. SIWICKI, SCOTT
PETERSON, JASON CAHILL, AND
DARRYL LITTLE, BEING SUED IN
THEIR INDIVIDUAL AND OFFICAL CAPA-
CITIES.
    Defendants

CIVIL ACTION NO. DCV857

COMPLAINT

Jury Trial Demanded

## Preliminary Statement

This is a civil rights action filed by Carnell Hunnicutt, Senior, a state prisoner, for compensatory, exemplatry and punitive damages in the defendants individual capacities and injunctive relief under 42 U.S.C. §1983 alleging retaliation against the plaintiff for utilizing the grievance process to redress the misconduct of staff/defendants named in this complaint and exercising his First Amendment rights. The defendants violated the plaintiff Constitutional rights while acting in collusion issuing retaliatory fabricated disciplinary infractions, retaliatory conspiratorally planned disciplinary hearings solely to punish the plaintiff for exercising a protected conduct that took an adverse action against him in violation of his First, Fourteenth and Fifth Amendment rights to the U.S. Constitution. The defendants also violated state laws under the Connecticut General Statutes §53-20 cruelty to persons - C.G.S. §53-37(b) deprivation of a person's rights by force or threat - C.G.S. §53a-155 Tampering with or fabricating physical evidence

## Jurisdiction

1) The court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §1331(a) and 1343.

2) The court has supplemental jurisdiction over the plaintiff's state law claims and seeks that the court would exercise pendent jurisdiction over said claims

## Parties

3) The plaintiff, Carnell Hunnicutt, Senior, was incarcerated at Northern Correctional Institution (herein after "Northern) during the events described in this complaint.

4) Defendant Tawanda Kitt is a correctional officer employed at northern. She's being sued in both Individual / official capacities

5) Defendant Dennis Marinelli is employed as a captain at Northern. He's being sued in both Individual / official capacities.

6) Defendant Angel Quiros is the warden at Northern. He's being sued in both Individual / official capacities.

7) Defendant Lauren Powers Is the deputy warden of programs and treatment at Northern. She's being sued in both Individual / official capacities.

8) Defendant Steffen Faucher is the deputy warden of operations at Northern. He's being sued in both Individual / official capacities.

9) Defendant Kim DiCioccio is employed as a correctional treatment officer at Northern. She's being sued in both Individual / official capacities.

10) Defendant Michael Lajoie is the district administrator at 3 Walker drive, Enfield Ct 06082. He oversees the Northern administration. He's being sued in both Individual / official capacities.

11) Defendant (First name unknown) Cormier is an Correctional lieutenant who conducts Disciplinary hearings at Northern. He's being sued in both individual / official capacities.

12) Defendant Kim Weir is employed as the Director of Security at 24 Wolcott Hill Road Wethersfield, cT06109. She's being sued in both Individual / official capacities

13) Defendant (First name unknown) Wilson is a correctional officer employed at Northern acting as an "Disciplinary Investigator." He's being sued in both Individual / official capacities.

14) Defendant Karl Krob is a correctional officer employed at Northern acting as a "Disciplinary Investigator." He's being sued in both Individual / official capacities.

15) Defendant (First name unknown) Pafumi is a Correctional lieutenant who is Supervisor of the property storage area for prisoners property. He's being sued in both Individual / official capacities.

16) Defendant (First name unknown) Siwicki is a correctional lieutenant at Northern. He's being sued in both Individual / official capacities.

17) Defendant Scott Peterson is the Administration Remedy Coordinator at Northern. He's being sued in both Individual/official capacities.

18) Defendant Jason Cahill is captain of 1 East unit at Northern. He's being sued in both Individual/official capacities.

19) Defendant Darryl Little is captain of 1 west unit at Northern. He's being sued in both Individual/official capacities.

20) All defendants have acted and continue to act, under color of law at all times relevant to this complaint.

## FACTS

21) On or about September 5, 2008, the plaintiff was transferred to Northern from Cheshire C.I., and assigned cell 114-1 west.

22) During this time defendant Kitt would work the unit and speak to the plaintiff about the cartoons he drew of her and other matters during his last stint at Northern. (2007 the plaintiff was in the Chronic Discipline Program at Northern and defendant Kitt would receive sexually themed cartoons from him when she worked the unit.)

23) On September 18, 2008, Inmate Eric Atkinson #214214 moved into cell 114-1 west with the plaintiff and witnessed him produce cartoons/letters for defendant Kitt that were of a romantic/sexual nature for her to keep - and watched said defendant accept these materials readily.

24) The plaintiff would communicate with defendant Kitt through letters/drawings which she would keep. This was an ongoing occurrance from September 2008 to January 16, 2009, until the plaintiff was moved to 3 East unit with Nathaniel Johnson, Jr. #269606.

25) During these events, defendant Kitt never discouraged, objected, rejected nor reported the plaintiff's drawings/letters that were sexually explicit and routinely given to the defendant to keep. At no time did defendant Kitt notify her superiors.

26) On January 25, 2009, the plaintiff continued to give defendant Kitt said material(s) each time she worked 3 east unit. The plaintiff's cellpartner (Nathaniel Johnson Jr.) would witness and read the cartoons, letters and a poem the plaintiff produced for defendant Kitt to keep. This occurred also on January 30th and February 1, 2009 when said defendant worked 3 east unit.

27) Defendant Kitt continued to receive written correspondence /cartoons from the plaintiff from February 1, 2008 to April 15, 2009. The plaintiff was moved to cell 102 3east with Donald Simmons"327517.

28) The plaintiff's cellpartner would read the letters /cartoons produced solely for defendant Kitt to keep and witnessed said defendant gladly accept said material on the dates she worked 3east unit from April 19th to May 5, 2009. During this time, the plaintiff became the 3east tierman and would spend time with defendant Kitt discussing the letters /cartoons in detail and became familiar with one another.

29) During this period the plaintiff would discuss his relationship with his psychological social worker Jill Haga in confidential settings periodically (about defendant Kitt and himself).

30) The plaintiff's cellpartner became tierman in 1west unit where defendant Kitt would work overtime. Said defendant would send messages to the plaintiff through Simmons.

31) On June 8, 2009, the plaintiff had a falling out with defendant Kitt over a cartoon that Counselor Norma Dwyer copied and gave to staff depicting herself, Kitt and various other staff at Northern and their idiosyncracies.

32) The plaintiff apologized to defendant Kitt and things resumed as before. The defendant continued to accept letters from the plaintiff.

33) On July 26, 2009, defendant Kitt informed the plaintiff she was the new property officer and commented that she never reviewed the cartoon drawn of her nor the new cartoons. The plaintiff informed defendant Kitt he would send her copies.

34) The plaintiff produced a letter for defendant Kitt questioning the rumors from her co-workers that she was a married woman sleeping with various co-workers and staff- seeking attention from inmates and posing suggestively to let inmates masturbate while she watched. Said defendant read the letter and walked away.

35) On August 5, 2009, the plaintiff had counselor Dwyer make copies of the cartoons defendant Kitt said she did not review and sent them to her.

36) The plaintiff was moved to 3west unit -cell 102 pending being placed on special needs status. The plaintiff being a level 4 prisoner was afforded property that general population was afforded.

37) Upon receiving property from defendant DiCioccio that defendant Kitt had given to be issued to the plaintiff, I noticed a C.D. missing and wrote defendant Kitt concerning the missing C.D. - all inquiries were ignored by said defendant.

4

38) On September 16, 2009, the plaintiff attempted to resolve his missing property issue through defendant Quiros due to not getting any response from defendant Kitt. As the plaintiff explained the property situation to defendant Quiros and failure to follow policy on defendant's Kitt's part - defendant Quiros stated, "Maybe it's because of the cartoons you drew." He walked away and never took any action.

39) On September 11, 2009, defendant Kitt was in 3 west unit preparing to retrieve property from an inmate transferring to another facility. The plaintiff handed CO Richard Zina a request intended for defendant Kitt concerning the missing C.D. Defendant Kitt looked at the plaintiff's cell, tore up the request and walked out of the unit after tossing the shredded request in the garbage.

40) On September 30, 2009, defendant Kitt worked 3 west unit - The plaintiff asked said defendant about his numerous requests concerning his missing property. Defendant Kitt stated, "That ought to teach you a lesson about drawing fucked up cartoons of me.." The plaintiff retorted that she had no problem with the cartoons that were full of sex and flattering to her (that defendant Kitt kept).

41) As a result of his missing property, the plaintiff did a series of cartoons of defendant Kitt from the information gathered from staff/inmates. Counselor Dwyer provided copies for staff at Northern.

42) Around this time, defendant Quiros instructed defendant Kitt to issue property storage bags to prisoners at Northern due to the removal of the metal storage lockers.

43) The plaintiff refused the storage bags due to memo issued stating if the bags were damaged or marked up (whether by staff or prisoners) a monetary fine of 25 dollars and disciplinary action would be imposed. The plaintiff did not want liability for said bags - defendant Kitt demanded that the plaintiff take and keep the bags. The plaintiff refused, angering said defendant who cursed the plaintiff.

44) October 13, 2009, the plaintiff returned from MacDougall-Walker to Northern after getting his eyes examined. The escorting officer (Gary Spillane) had the plaintiff stand in front of the property office while waiting for the hallway to clear. Defendant Kitt was on her cellphone when the plaintiff informed her he gave the property storage bags to defendant DiCioccio and they would be returned and not to place them on his property matrix. Defendant Kitt turned and yelled, "You can't return the bags, I'm not taking them back!" "Who do you think you are?"

45) As defendant Kitt turned to resume talking on her cellphone, I noticed an inmate worker from Enfield Correctional Institution handling/processing property of Northern inmates. The plaintiff stated that no inmate was supposed to be handling another inmate's property and that was why so many property items were missing from Northern inmates (including my own). Defendant Kitt ignored me and continued talking on her cellphone.

46) The plaintiff notified defendants Faucher and Powers of the inmate handling property on October 13, 2009. The matter was given to defendant Pafumi to investigate.

47) Shortly thereafter, defendant Pafumi informs the plaintiff there was no inmate in the property room on October 13, 2009, and defendant Kitt did nothing wrong. Said defendant further stated all inmates are liars and he takes the word of his staff over inmates. The plaintiff told defendant Pafumi his statement and so-called investigation was no surprise from someone who sold his morality for a paycheck and was expected. Defendant Pafumi was angered and stated he'd get even.

**\* PROTECTED CONDUCT**

48) On October 26, 2009, the plaintiff filed a grievance on defendant Kitt for his missing property due to allowing inmates handle/process other inmates property at Northern.

49) On the same day officer Daire requested to see the cartoons I was compiling for an outside audience (different from the ones given to defendant Kitt) to be printed and published for public sale. One of the officers viewing the cartoons took offense (inhouse informant Kevin Brace) and notified defendants Kitt and Marinelli of cartoons that were already known about for the last three months by staff.

50) October 27, 2009, defendant Marinelli ordered lieutenants Germond and Rivera to confiscate all of the plaintiffs artwork and cartoons compiled.

**\* THREATS**

51) Defendant Marinelli threatened the plaintiff if any more cartoons were drawn of staff he would issue a disciplinary report for each cartoon and place the plaintiff on Administrative Segregation status. Defendants Quiros, Powers, Faucher and Marinelli ordered staff to confiscate any cartoons of staff from the plaintiff, destroy them, and issue a disciplinary report.

5.) The plaintiff ceased producing cartoons for staff and sent all his cartoons to his websites.

## * ADVERSE ACTION / RETALIATION

53) ON October 30, 2009, defendant Kitt was retrieving property from an inmate in 3 west unit. Her demeanor was angry and hostile as the plaintiff attempted to inquire about his property and attempt to come to an amicable solution. The defendant snapped, "You want to write me up (grieve) and draw fucked up cartoons of me, now you want your property?!" "You are a stupid piece of shit and you're not getting nothing!"

54) As a result of being insulted, the plaintiff insulted defendant Kitt back and other inmates joined in the fray insulting defendant Kitt further angering her. Said defendant stated, "I'm going to fix you for writing me up and your damn cartoons." As defendant Kitt walked off the tier I heard her tell officer Snolowski, "I'm going to write him a ticket." (referring to the plaintiff)

55) During the insulting match between the defendant (Kitt) and the plaintiff, there were five officers who watched / witnessed the exchange.

56) Defendant Marinelli immediately placed the plaintiff on Administrative Detention status and removed the plaintiff's Television, radio, c.d. player and fired him as 3 west tierman with no investigation, witnesses, or evidence. The plaintiff received a retaliatory fabricated "Threats" ticket from defendant Kitt.

57) An inmate on the tier who had a loaner radio from property officer Kitt was so angry that she lied on the plaintiff- he gave the radio to the plaintiff to keep while he was on Administrative Detention.

## * DELIBERATE INDIFFERENCE

58) Later on the same day defendant Wilson tried to get the plaintiff to plead guilty by stating, "You know if you fight the dir. you're going to get found guilty and given the maximum sanctions." The plaintiff stated not guilty and named the five officers and two inmates who witnessed the exchange. Defendant DiCioccio was picked as the plaintiff's advocate.

59) Defendant DiCioccio was Informed by the plaintiff that since he was housed in a segregated housing unit and could not conduct an independent Investigation nor obtain witness statements from staff and gather evidence / documentation- she would need to do these things as per policy.

7

60) Defendant DiCioccio told the plaintiff she didn't have to do anything I requested because defendant Wilson said she did not have to. The plaintiff informed defendant DiCioccio that defendant Wilson did not have the authority to supercede policy and showed her the DOC policy governing disciplinary procedures/rules. Defendant DiCioccio still refused.

61) The plaintiff wrote defendant Weir to conduct an investigation into defendants Pafumi, Quiros, Powers, Faucher and Marinelli who demonstrated deliberate indifference and gross negligence in failing to act and cease defendant Kitt's retaliatory behavior or find out why said defendant's behavior     towards the plaintiff was so malicious. And said defendants were acting in collusion to retaliate against the plaintiff for filing a grievance and voicing complaints against defendant Kitt to the point they refused and failed to review evidence or interview his former callmates to substantiate defendant Kitt's actions were fueled by her familiarity with the plaintiff.

62) ON November 3, 2009, Defendant Weir toured 3 west unit with defendants Quiros, Faucher, Powers and Marinelli. The plaintiff produced a copy of the letter submitted October 30, 2009, to defendant Weir. As Weir read the letter while defendants Quiros and Marinelli looked on, the plaintiff asked if she received the original. Defendant Weir stated "No" and changed the subject by informing the plaintiff she still retains the sexual cartoons I sent her in 2002.

63) ON November 5, 2009, the plaintiff wrote defendant Wilson to withdraw defendant DiCioccio as his advocate due to her failure to follow policy to investigate the retaliatory fabricated disciplinary charge for filing a grievance on defendant Kitt and failing to assist the plaintiff who is confined in a segregated housing unit and is incapable of preparing for a hearing without assistance. Wilson ignored the plaintiff's request due to already having recommending the plaintiff be found guilty with no evidence, documentation, staff witnesses to support the charge.

64) ON November 12, 2009, After learning about the October 30th letter to defendant Weir, Defendant Kitt informs defendant Marinelli that she "fears for her life," because the plaintiff is "obsessed" with her and might "snap her neck," because he's done it in the past." The plaintiff was forced to submit to a psychological evaluation conducted by Mark Fravne in the presence of defendant Marinelli

8

PARTIAL/CONSPIRATORALLY PLANNED DISCIPLINARY HEARING

65) ON November 17, 2009, the disciplinary hearing was conducted after two (2) continuances the plaintiff was not notified of and eleven days in violation of standing DOC policy ( hearing date not to exceed 10 business days )

66) The plaintiff objected to the hearing due to no advocate was given to replace DiCioccio to conduct an independent investigation, gather staff eyewitnesses statements who viewed the verbal exchange that took place, to copy evidence and to assist in the preparation of the plaintiff's defense.

67) Defendant Wilson acknowledged receiving the plaintiff's request to withdraw Defendant DiCioccio as his advocate, but made no effort to replace his advocate to follow policy and proceeded with the hearing despite the plaintiff objections.

68) The plaintiff requested that acting Disciplinary Hearing Officer ( Hereinafter "DiHo") Comier put on the record that he objected to not being given adequate assistance while confined in a SHU, not allowed to call staff witnesses he named, and that defendants DiCioccio and Wilson were acting in collusion with defendant Kitt to punish the plaintiff and deliberately deny him a fair hearing in retaliation for complaining about her actions and filing the grievance.

69) Defendant Comier acting on defendant Wilson's recommendation found the plaintiff guilty with no evidence, no witnesses, nor anything to support the disciplinary charge. Defendant Comier told the plaintiff he was notorious' for his cartoons and maybe he ought to stop drawing staff. The plaintiff requested copies of all documentation /evidence utilized to find him guilty so that he could appeal the decision - Nothing was given.

70) The plaintiff was given 90 days loss of phone - 90 days loss of commissary 15 Days Punitive Seg.

71) The plaintiff appealed to defendant Lajoie who denied the appeal and copies of the evidence /documentation to support his decision the plaintiff requested. None was given.

72) ON November 18, 2009, Defendants Powers and Marinelli informed the plaintiff he would remain on full restraints status after serving fifteen days on said status without incident ( no notification, hearing, nor placement order was given)

9

Said defendants only rationale for keeping the plaintiff on full-restraint status was, "You seem angry." Although the plaintiff behavior had been exceptional throughout the retaliation and punishments endured for the Fabricated/retaliatory disciplinary charge from defendant Kitt and her co-workers acting in collusion.

73) On December 9, 2009, defendant Kitt discovered the plaintiff had the loaner radio given to him from another inmate on October 30, 2009. Said defendant called the plaintiff's cell via the intercom three times cursing and insulting the plaintiff. Officer Daire was notified by the plaintiff and told defendant Kitt to stop calling his cell harassing him. Defendant Kitt called the cell a fourth time to call the plaintiff a "snitch" - a "piece of shit" and to "shove the radio up his ass." Other inmates heard these exchanges as well.

\* DELIBERATE INDIFFERENCE

74) Defendants Quiros, Powers, Faucher, and Marinelli were informed of defendant Kitt calling the plaintiff's cell to antagonize and insult him. All the defendants ignored the plaintiff and did nothing.

75) The plaintiff frustrated with the defendants acting in collusion to retaliate against him for complaining about staff harassment/abuse while defendants Quiros, Powers, Kitt, Faucher, Marinelli, DiCioccio, Rafumi, Comier, and Wilson have a "green light" to try to deter the plaintiff. Again, the plaintiff wrote defendant Weir to conduct an investigation and that her failure would substantiate she's acting in collusion with the defendants as well.

76) In a letter dated January 13, 2010, defendant Weir responded that she was placing the matter concerning defendant Kitt back into the hands of the very people who acted with gross negligence / deliberate indifference and collusion with defendant Kitt. And who ignored / refused to review evidence, investigate or interview the plaintiff's former cellmates to substantiate the plaintiff and defendant Kitt had a relationship that went sour and the plaintiff was being vilified and punished by the defendants.

77) On January 21, 2010, Defendant Siwicki approached the plaintiff while he was in the gym with Walmier Rivera and Andy Cameron to "investigate" his claims concerning defendant Kitt. Defendant Siwicki investigation consisted of him telling me he read the letter to defendant Weir and did I have anything to add.

10

78) ~ The plaintiff informed defendant Siwicki if he read the letter to defendant Weir, why wasn't he interviewing his former cell partners, the psychologists, or asking to review the evidence to prove he had a relationship with defendant Kitt (which would prove her malicious behavior towards the plaintiff). Defendant Siwicki said he'd speak to P.S.W. Jill Haga. The plaintiff watched the defendant walk directly to defendant Kitt's work area.

79) January 25, 2010, Jill Haga toured 3 west unit and the plaintiff asked if defendant Siwicki interviewed her concerning the "investigation" on defendant Kitt. Jill Haga replied, "No, this is the first I've heard of it."

80) The plaintiff received notice from defendant Quiros stating the investigation conducted by defendant Siwicki - no evidence was found to indicate any violations of policy by defendant Kitt and considered the matter closed. That very day January 27, 2010, said defendant worked the unit smirking at the plaintiff.

**✗ ADVERSE ACTION**

81) The plaintiff was let out of his cell (no restraints) for a shower while defendant Kitt stood three feet away glaring at the plaintiff who ignored her.

82) After the plaintiff finished showering - Officer Prouty handed out razors. Fifteen minutes later defendant Kitt picked up razors from all inmates that were issued razors, excluding the plaintiff. When the plaintiff asked if she was going to take his razor, defendant Kitt stated, "You refused to give me your razor, now it's my turn to write you up."

83) The plaintiff used his cell intercom to inform the officer in the control booth defendant Kitt did not take his razor. Two minutes later Co Romano picked up the plaintiff's razor.

84) Defendant Kitt would tour the unit and kick the plaintiff's door and call him a "snitch" and "attention whore." The plaintiff ignored her.

85) Defendant Kitt continued to antagonize the plaintiff on her tours and stated "I have your C.D. too bad you can't hear your family sing." Thats when then plaintiff wrote an insulting request lambasting her character/behavior and sent it to her.

11

86) ON February 5, 2010, defendant Pafumi toured 3west unit between 7a.m.-7:15a.m. when said defendant stopped at the plaintiff's cell door and said, "It's payback time." Soon afterward, officer White placed a sign that read "A.D. cuff behind the back."

87) The plaintiff asked officer White what was going on — said officer stated, "Orders from Marinelli to place you on A.D. status." Thirty minutes later the sign was changed to "A.D. status FULL RESTRAINTS STATUS." officer White stated, "This is Marinelli's doing."

88) Between 8:10am - 8:20a.m. defendant Marinelli toured the unit and stopped at the plaintiff's cell door smiling. The plaintiff asked why was he placed on A.D. status with full restraints. Defendant Marinelli stated, "You threatened my officer." The plaintiff said he threatened no one — said defendant said, "Tell it to the DHo."

89) The plaintiff informed defendant Marinelli he wasn't issued a disciplinary charge so what did the DHo have to do with his A.D. status. Said defendant stated, "Don't worry, you'll be getting a d.r. soon." Defendant Marinelli smiled and walked away.

90) Around 1p.m. defendant Pafumi and lieutenant Sharp entered 3west unit and came to the plaintiff's cell. Defendant Pafumi said, "Now I got you where I want you — pack up!"

91) The plaintiff asked defendant Pafumi where was he being moved to — and was informed by the defendant "1East."

92) As the plaintiff was packing his property defendant Krob delivered the disciplinary report and asked how he was going to plead before he even got a chance to read the d.r. The plaintiff pled not guilty after reading the charge because it was broad and vague, fraudulent, retaliatory and no one was threatened.

93) Upon closer inspection the plaintiff noticed defendant Pafumi signed the "Threats" d.r. issued from defendant Kitt and pointed out to defendant Krob that the evidence used does not support the charge and was erroneous per policy. Also that there was no specific allegations to a threat by defendant Kitt in the d.r. and the only thing I was guilty of was insulting language.

94) Defendant Krob stated, "I don't know why you're wasting my time, you're not going to beat the ticket. It's staff's word over an inmates." The plaintiff gave his statement which he was denied to review and sign to verify it was accurate, chose his advocate and requested copies of any and all evidence /documentation to prepare his defense.

95) After completing packing his property defendant Pafumi ordered officers Stewart and Melendez to handcuff and shackle the plaintiff.

## DELIBERATE DEPRIVATION OF PROPERTY

96) As defendant Pafumi along with officers Stewart and Melendez was escorting the plaintiff to 1East unit, the plaintiff questioned why was lieutenant Sharp taking his property towards the property officer area (defendant Kitt) and why was his property being withheld and placed into the care of the very person who keeps writing fabricated retaliatory d.r.'s on him.

97) Defendant Pafumi smiled and stated, "She's the property officer and she'll take good care of your property." The plaintiff pointed out inmates being moved from one unit to another normally have their property follow them, so why was routine procedure being changed in the plaintiff's case. Defendant Pafumi ignored the question.

98) The plaintiff informed defendant Pafumi inmates on A.D. status are afforded their property and property not allowed is stored in the unit or Captain's office where they are housed. Why was he being treated differently and his property given to defendant Kitt who wrote him a ticket and would destroy his property in retaliation. Defendant Pafumi said, "It would serve you right."

99) The plaintiff was placed on Death Row unit - 1East cell-120 with no property no hygiene items, no change of clothing or writing material. The plaintiff was only allowed his bedding /Linen.

100) The plaintiff requested to speak with the unit manager defendant Cahill- said defendant informed the plaintiff he would get nothing until monday once the CTO went through his property to check for contraband.

101) The plaintiff pointed out as per policy he was allowed his property due to the fact he was not on incell restraints nor four point restraints and while on A.D. status his electronic items were to be retained by staff until his A.D. status was removed – not the property officer. The plaintiff demanded a receipt for his property. None was given.

102) Defendant Cahill stated to the plaintiff, "You'll get nothing until monday" the plaintiff asked for hygiene items to wash himself and brush his teeth. Defendant Cahill retorted, "You can tough it out, rip a sheet to wash up with." Said defendant then left the unit.

103) On February 8, 2010, the plaintiffs advocate defendant Peterson met with him – the plaintiff requested a copy of the document that was used as evidence for the "Threats" d.r. to prepare his defense. defendant Peterson stated, "I haven't seen it yet." The plaintiff asked how could he conduct an independent investigation and gather any evidence to assist in preparing a defense if he doesn't have all the facts and documents. Defendant Peterson said he'd get a copy for the plaintiff.

104) That evening, Josh Kamergeski (phonetically spelled) the inmate housed in 1 East cell-119 next to the plaintiff returned from an outside court trip and informed the plaintiff his property was sitting in the A/P room from the time he went to court until the time he got back (7am – 6p.m.). Said inmate described my television and stated my name was on it and stated my property was in plastic bags.

105) The plaintiff stopped lieutenant Tommy Reardon as he was touring 1 east unit and informed him of his property situation and being deprived of hygiene items, clothing, and property allowed while on A.D. status. Lieutenant Reardon said he'd look into the matter.

106) Around 8:30 p.m. lieutenant Reardon returned with the plaintiff's property and informed him that he personally removed the electronic items due to the plaintiff being on A.D. status. The plaintiff asked said lieutenant if his electronic items were damaged – the lieutenant said, "No. I took them out myself and nothing was wrong with them."

107) February 9, 2010. defendant Cahill allows the plaintiff to shower for the first time since being moved into 1 East unit. The plaintiff again requests a receipt for his property that was in defendant Kitt's possession. Defendant Cahill tells the plaintiff to write defendant Kitt and hope she doesn't write another ticket. Said defendant laughed and walked away. The plaintiff wrote defendant Kitt for a

receipt for his property in her possession.

108) Defendant Krob was escorting Josh Kamengerski (phonetically spelled) to an dental appointment when the plaintiff requested a copy of the evidence to prepare his defense and failure to produce a copy would be in violation of DOC policy and his due process rights. Defendant Krob stated he would make the evidence available. He never did.

109) The plaintiff filed a grievance on defendant Kitt for filing fabricated retaliatory tickets on him and requested a separation status and/or profile created to avoid contact with the plaintiff.

110) On February 10, 2010, The plaintiff questioned defendants Quiros and Cahill as they toured least unit why was his property given to defendant Kitt who've written two retaliatory/fabricated d.r.'s, claims to fear for her life because of him, and is clearly hostile due to the grievance(s), cartoons, and the investigation concerning her. Defendant Quiros stated, "She's the property officer, that's why she has your property."

111) The plaintiff told defendant Quiros that defendant Kitt was going to destroy his property and again requested a separation status/profile to stop the routine punishment for the fabricated retaliatory disciplinary reports written by defendant Kitt. Defendant Quiros ignored the plaintiff's request by stating he was obsessed."

112) The plaintiff receives a receipt for his property six days later on February 11, 2010, defendant Kitt gave to officer Pagulino to issue to the plaintiff.

   ✷DENIAL OF DUE PROCESS

113) On February 17, 2010. The plaintiff strongly objected to the disciplinary hearing due to his advocate failing to conduct an independent investigation, failing to produce copies of the evidence for the plaintiff to prepare a defense/dispute the charge, and failing to assist in preparing a defense for the plaintiff confined in a SHU. The plaintiff stated that defendants Krob and Peterson were acting in collusion with defendants Kitt, Pafumi, Quiros, Faucher, Powers, Marinelli and Wilson solely to punish the plaintiff on trumped up charges.

114) Defendant Comier laughed and stated, "Come on, you know what's going to happen. It's staff's word against yours, you know I'm going with staff's word." Said defendant continued, "Stop with your stupid cartoons and pissing off staff and accumulating d.r.t." The plaintiff informed defendant Comier the First Amendment gives him the right to draw his "stupid cartoons" and he would continue to exercise his Constitutional right.

115) The plaintiff was found guilty on information not mentioned in the disciplinary report and that defendant Kitt made no mention of. Defendant Krob embellished his report in a effort to support the deficient dir. that was broad and vague on surface.

116) The plaintiff was sanctioned 90 days loss of phone - 90 loss of commissary and 15 days punitive seg. Again the plaintiff requested copies of evidence/documents utilize to find him guilty. Nothing was given

117) The plaintiff appealed the guilty finding to defendant Lajoie who rubberstamped the decision and would not provide the plaintiff with copies of evidence/documents to support the guilty finding of the DHO that defendants Cormier, Krob and Peterson denied the plaintiff.

118) On February 18, 2010, the plaintiff was moved to a more punitive setting in 1 west unit.

119) On February 19, 2010, defendants Quiros and Little toured 1 west unit-the plaintiff inquired about his property and was informed by defendant Little he'd receive his property on February 22nd after he served his punitive seg time. The plaintiff told defendants Quiros and Little that defendant Kitt would destroy his property. Defendant Little asked how did he know that Kitt will destroy his property. The plaintiff told them, "I know her and I know how she thinks."

120) February 22, 2010, the plaintiff did not receive his property despite repeatedly requesting it and completing his punitive seg time.

※ DAMAGED CONTRABAND PROPERTY

121) On February 23, 2010, officer Brace gave the plaintiff his electronic items and immediately the plaintiff noticed his headphones were broken. The plaintiff examined his television and saw the left side was smashed open and his adapter was damaged as well.

122) The plaintiff reviewed the property receipt and noticed defendant Kitt's initials and defendant's Little signature on it dated February 22, 2010. The property was in defendant Little's possession a full day and he did not notice the broken property and gave the plaintiff contraband that could be used as weapons.

16

123) The plaintiff immediately informed staff (Brace, Galbert, McIntosh and several others) of the damaged contraband property and requested an incident report be created as per policy dictates - all refused. The plaintiff demanded that defendant Little be notified to inspect the damage and file an incident report.

124) Defendant Little refused to inspect the property that was in his office the day previously and did not tour 1 west unit for three days.

125) On February 24, 2010, defendant Quiros toured 1 west unit and the plaintiff showed him the damaged contraband items given him. Said defendant stated, "Your television wasn't like that the last time I saw it." Defendant Quiros told the plaintiff to file a grievance and he would approve it.

126) Several officers verified the plaintiff's property was not damaged prior to being in defendants Kitt's possession to defendant Quiros. Defendant Quiros himself stated this to the plaintiff.

127) On February 25, 2010, lieutenant Reardon was shown the damaged property in the plaintiff's cell. Said lieutenant verified the items were not damaged when he removed them from the plaintiff's property on February 8, 2010.

128) On February 26, 2010, defendant Faucher informed the plaintiff he was conducting an "investigation" into his damaged property. Defendant Little was standing next to defendant Faucher when the plaintiff asked defendant Little why did he sign for damaged property that sat in his office overnight and pass it on to the plaintiff like he wouldn't notice the broken items. Said defendant ignored the question.

129) March 2, 2010, the plaintiff was in his cell reading and heard his door bump and looked up to see defendant Kitt glaring at the plaintiff. The defendant asked, "Why aren't you watching t.v.?" Smirking the defendant walked away. Defendant Kitt sat in the unit for over an hour talking and gloating.

130) On March 3, 2010, defendant Siwicki came to confiscate the contraband property that sat in the plaintiff's cell for seven days for his so-called investigation.

✗ HARASSMENT

131) During this time the defendants gave defendant Kitt carte blanche to do anything she wanted. Defendant Kitt would desert her post and enter 1 West unit on unofficial business of collecting money and delivering food to staff with the knowledge of defendants Little and Quiros.

132) During these unofficial visits — defendant Kitt would call the plaintiff on his cell intercom to insult the plaintiff and call him a "snitch" along with other choice names. This first occurred in 1 west unit on March 11, 2010.

133) On March 18, 2010, the plaintiff received another call via his cell intercom from defendant Kitt who stated; "I don't care who you write, nothing is going to happen to me. I'm a state employee who's protected and you're an inmate who's not!"

134) The plaintiff wrote defendants Quiros and Little about the incidents and never received a response. The plaintiff wrote defendants Lajoie and Weir to stop the harassment and defendant Kitt's unofficial visits to 1 west unit and to inspect the video surveillance camera tape on the dates mentioned to verify his claims — nothing was done to date.

135) March 26, 2010, defendant Kitt deserts her post and unofficially enters 1 west unit to collect money from staff and to hang out. Upon seeing the plaintiff at his door said defendant gives him the middle finger.

136) The plaintiff filed a grievance due to the defendants deliberate indifference and is placed on grievance restriction because defendant Quiros states I'm filing harassing grievances on defendant Kitt.

137) Defendant Quiros also found defendant Kitt not responsible for the damaged property that was in her possession belonging to the plaintiff.

✗ EXHAUSTION OF ADMINISTRATIVE REMEDIES

I USED THE ADMINISTRATIVE REMEDY PROCEDURE IN THIS INSTITUTION TO TRY AND RESOLVE ALL THE PROBLEMS WITHIN THIS COMPLAINT. SEE 141-10-158*141-10-196 * 141-10-383* 141-10-368* 141-10-364* 141-10-438* 141-10-002R

18

CLAIMS FOR RELIEF

138) The actions of defendant Kitt retaliation for the plaintiff filing a legitimate grievance on her abuse /misconduct and for exercising his First Amendment rights that resulted in fabricated retaliatory disciplinary reports were done in a malicious manner took an adverse action in violation of the First and Fourteenth Amendments of the U.S. Constitution.

139) The actions of defendants Marinelli, Quiros, Powers, and Faucher to censor, silence and punish the plaintiff for exercising his First Amendment rights violated the First, Fifth, and Fourteenth Amendments to THe U.S. Constitution.

140) The failure of defendants Dicioccio, Peterson, Wilson, Krob, and Comier to afford the plaintiff substantive due process rights through denying staff witnesses, assistance in preparing a defense while housed in a SHU, evidence tampering /withholding of evidence and acting in collusion to punish the plaintiff for complaining of staff's misconduct violated the First, Fifth, and Fourteen Amendments with deliberate indifference, also C.G.S.S 53a-155 Tampering with or Fabricating physical evidence

141) The failure of defendants Powers, Faucher, Pafumi, Quiros, Marinelli, Siwicki, Lajoie, Weir, Cahill and Little to act and stop the abuse /harassment and retaliatory actions of defendant Kitt against the plaintiff in their supervisory positions and noticed the unconstitutional practices of defendant Kitt demostrated gross negligence and deliberate indifference in violation of the First, Fifth and Fourteenth Amendments of the U.S. Constitution.

142) The actions of defendants Quiros, Marinelli, Powers and Faucher confiscating the plaintiff's artwork for an outside audience without compensation violated the First, Fifth and Fourteenth Amendments to the U.S. Constitution

143) The actions of harassment and retaliation by defendants Kitt and Pafumi acting in collusion solely to punish and deprive the plaintiff of property violated the Fifth and Fourteenth Amendments of the U.S. Constitution.

144) The actions of defendant Quiros, Marinelli, Faucher, Powers, Little, Cahill, Weir, Lajoie, Pafumi, and Siwicki allowed and condoned defendant Kitt's punishment of the plaintiff for using a protected conduct while justifying and ignoring the unconstitutional acts of harassment /retaliation in violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution.

145) The actions of defendants Comier, Wilson and Krob conspiratorially planned disciplinary hearings that did not meet the minimum standards of due process violated the plaintiffs' First and Fourteenth Amendments to the U.S. Constitution.

146) The threats from defendants Marinelli, Quiros, Powers and Faucher to stop the plaintiff from producing cartoons through the use of force (confiscation), censorship and retaliation is in violation of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution. Also C.G.S. § 53-37(b) Deprivation of a person rights by force or threats.

147) The action of defendant Cahill to deliberately deprive the plaintiff of property acting in collusion with defendants Marinelli, Pafumi, and Kitt violated the Fifth and Fourteenth Amendments to the U.S. Constitution. Also C.G.S. § 53-20 cruelty to persons.

148) The actions of defendants Marinelli, Pafumi, and Kitt acting in collusion solely to retaliate and harass the plaintiff to destroy his property violated the Fifth and Fourteenth Amendments of the U.S. Constitution.

149) The actions of defendant Quiros placing the plaintiff on grievance restriction due to informing supervisory staff of defendant Kitt deserting her post and unofficially entering the unit harassing the plaintiff was retaliatory. Defendant Quiros acted with deliberate indifference and retaliation for being grieved, for condoning defendant Kitt's behavior - This violated the First, Fifth and Fourteenth Amendments to the U.S. Constitution.

# ☀ RELIEF REQUESTED

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgement stating that:

1) The retaliatory fabricated disciplinary charges, harassment and deliberate destruction of the plaintiff's property by defendant Kitt violated the plaintiff's First, Fifth and Fourteenth Amendment rights to the U.S. Constitution.

2) Defendants Quiros, Marinelli, Powers, Faucher, Pafumi, Little, Weir, Lajoie, Cahill and Siwicki failure to take action to curb the harassment, retaliation and destruction of the plaintiff's property violated the plaintiff's rights under the First, Fifth and Fourteenth Amendments.

3) Defendants Comier, Wilson, Krob, DiCioccio and Peterson actions in depriving the plaintiff the minimum of substantive due process rights and acted in collusion to punish the plaintiff violated his rights under the Fourteenth Amendment to the U.S. Constitution and Fifth Amendment.

20

B. Issue an order permanently enjoining the defendants from harassing /retaliating against the plaintiff for filing grievances or producing cartoons for an outside audience

C. ① Compensatory damages in the amount of $20,000 against defendant Kitt;

② $10,000 against Marinelli, Quiros, Powers, Faucher, DiCioccio, Lajoie, Comier, Weir, Wilson, Krob, Pafumi, Siwicki, Peterson, Cahill and Little Jointly and severally each.

D. Award punitive damages in the amounts:
① $40,000 against defendant Kitt

② $30,000 each against defendants Marinelli, Quiros, Powers, Faucher, Di-Cioccio, Lajoie, Comier, Weir, Wilson, Krob, Pafumi, Siwicki, Peterson, Cahill and Little.

E. Costs, expenses and attorney fees

F. Any other relief this court deems just, proper, and equitable

## DECLARATION UNDER PENALTY OF PERJURY

I, Carnell Hunnicutt, Senior, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Somers, CT on May 26, 2010

Carnell Hunnicutt, Senior #229589
Northern C.I. P.o. Box 665
Somers, CT 06071

2.1